IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 16-cv-00125-LTB

BRADLEY L. YUTZY,

  Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

  Defendant.

_____

ORDER
_____

  Plaintiff Bradley Yutzy appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have considered the parties' briefs [ECF Nos. 16–17, 20] and the administrative record [ECF No. 13] ("AR"). Oral argument would not materially assist me in determining this appeal.

  Mr. Yutzy contends that the administrative law judge ("ALJ") erred (1) by improperly analyzing the opinion of a treating psychiatrist, Dr. Jeffrey Harazin; (2) by failing to consider the opinion of an agency psychologist; (3) by failing to properly consider the opinions of Mr. Yutzy's former employer and his former coworker regarding his ability to work; (4) by improperly assessing Mr. Yutzy's credibility; and (5) by arriving at contradictory factual findings at different steps of the sequential evaluation process.

For the reasons described below, I agree with the first four arguments, but I reject the fifth. Accordingly, I **REVERSE** the SSA's decision and **REMAND** for further proceedings consistent with this opinion.

## I. Background

### A. Procedural History

Mr. Yutzy filed his claim for disability benefits with SSA in December 2012, alleging disability beginning November 23, 2012. AR 94–95. After SSA initially denied his claim, AR 40–50, Mr. Yutzy requested a hearing, AR 54–55. The hearing took place on May 15, 2014, before an ALJ. AR 25–39. At the hearing, Mr. Yutzy requested a closed period of disability, from November 23, 2012, through March 24, 2014. AR 29. On June 5, 2014, the ALJ denied Mr. Yutzy's claim, concluding that Mr. Yutzy was not disabled within the meaning of the Social Security Act. AR 12–24. Mr. Yutzy asked SSA's Appeals Council to review the ALJ's decision. AR 10–11. On November 20, 2015, the Appeals Council denied review, AR 1–5, making the ALJ's decision the final decision of SSA. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On January 18, 2016, Mr. Yutzy timely filed this appeal. [ECF No. 1]. I have jurisdiction pursuant to 42 U.S.C. § 405(g).

### B. Facts

During a period of significant personal stress in spring 2012, Mr. Yutzy's mental health deteriorated. He was admitted to a psychiatric hospital on April 30, 2012, with a Global Assessment of Functioning score of 15 on a scale of 1–100 and diagnoses of bipolar disorder and anxiety disorder. AR 160, 164. After he was

discharged from the hospital, he moved to Colorado to live with his parents. AR 30. He began working as a general laborer for his father's company, but according to his father, he could not complete even simple tasks like painting a wall. AR 195–96. Mr. Yutzy's father explained:

> I worked with him to the best of my ability. In the end I realized that he was truly disabled and couldn't be productive for me or any other employer. I had to let him go in the fall of 2012. The Homestead Group couldn't afford the continual mistakes, or someone to watch him 100 percent of the time.

AR 196. Mr. Yutzy's brother, who also worked for the same company, explained that he tried to "train and teach him how to do simple tasks" like painting, digging, and unloading materials, but Mr. Yutzy could not effectively perform those tasks. AR 197.

Mr. Yutzy's requested disability period begins on November 23, 2012, after he stopped working for his father's company. After he left that job, he met with Dr. Harazin roughly every two to four weeks for treatment for his bipolar disorder and anxiety. Dr. Harazin initially prescribed Mr. Yutzy various medications to stabilize his mood and treat his anxiety, but the medications either didn't work, had severe side effects, or both. AR 180–83; 190; 192; 201–03. The prescribed medications included Abilify, AR 181, Prozac, *id.*, Zyprexa, AR 180, and Latuda, AR 203. The progress notes from that period indicate that Mr. Yutzy's mood was labile, *e.g.*, AR 180, he was often tired, *e.g.,* AR 181, and he was at times anxious, AR 182, confused, AR 190, and "hypomanic," AR 203. The notes also reflect that at times he had a "poor response to meds." AR 202.

In July 2013, a state agency psychologist, Dr. Mark Berkowitz, reviewed Mr. Yutzy's file. Dr. Berkowitz concluded Mr. Yutzy was not "sufficiently stable to handle full–time work," but Dr. Berkowitz did not believe the limitations would last more than 12 months given Mr. Yutzy's "good pre–morbid work history and steady improvement." AR 45.

Also in July 2013, Dr. Harazin completed a "mental impairment questionnaire." AR 184–89. Dr. Harazin opined that some of Mr. Yutzy's impairments would preclude performance of certain tasks for a complete workday. AR 187-88. He concluded that Mr. Yutzy was at least partially impaired in his ability to "remember work–like procedures, understand and remember simple or complex instructions, maintain attention, comply with a schedule, sustain a routine, work with others, make decisions, and work without an unreasonable number of breaks. *Id.* He also opined that Mr. Yutzy's impairments would last longer than 12 months. AR 186.

In January 2014, Dr. Harazin prescribed Mr. Yutzy Seroquel XR. This helped to stabilize his mood, but caused excessive fatigue. AR 201. Dr. Harazin then switched Mr. Yutzy to a different form of Seroquel in February 2014. *Id.* Mr. Yutzy quickly stabilized and improved. *Id.* At his appointment on March 24, 2014, Dr. Harazin observed that Mr. Yutzy was "doing well. States change to Seroquel worked well." *Id.* After the March 2014 appointment, Mr. Yutzy returned to full–time work. AR 34.

## II. Legal Standards

A.  SSA's Five–Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. § 404.1520(d). If not, SSA goes to step four. At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what he is still able to do

despite his impairments, and asks whether the claimant can do any of his "past relevant work" given that RFC. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

B.   Standard for Reviewing SSA's Decision

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822

F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Mr. Yutzy had not engaged in substantial gainful activity from his alleged onset date of November 23, 2012, until March 24, 2014, and met the insured requirements of the Social Security Act through December 31, 2014. AR 17. At step two, the ALJ found Mr. Yutzy had two severe impairments during the relevant period (November 23, 2012, through March 24, 2014): affective disorder and anxiety. AR 17. At step three, the ALJ concluded that Mr. Yutzy's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 19–20. At step four, the ALJ found that Mr. Yutzy had the following RFC during the relevant period:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non–exertional limitations: no complex tasks (SVP 2 or less), occasional dealing with coworkers, and no dealing with the general public.

AR 20. The ALJ determined that Mr. Yutzy could not return to any of his past relevant work and proceeded to step five. AR 22. At step five, the ALJ concluded

that considering Mr. Yutzy's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Mr. Yutzy could perform, including a flagger, a collator operator, and an electronics worker. AR 23. The ALJ accordingly concluded that Mr. Yutzy was not disabled under the Social Security Act during the relevant period. AR 24.

## IV. Analysis

### A. Dr. Harazin's Opinion

Mr. Yutzy argues the ALJ failed to properly analyze the opinion of Dr. Harazin, a treating psychiatrist, by failing to apply the proper controlling–weight analysis and failing to provide legally sufficient reasons for rejecting it. I conclude the ALJ implicitly applied the proper controlling–weight analysis, but I agree he erred by failing to provide a sufficient explanation for rejecting Dr. Harazin's opinion. The case must, therefore, be remanded for further proceedings.

In deciding how much weight to give a treating source opinion, an ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must first determine whether the opinion qualifies for "controlling weight." *Id.* An opinion from an acceptable medical source is entitled to controlling weight if it is both "well–supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. SSR 96–2P, 1996 WL 374188, at *1 (July 2, 1996). Even if not entitled to controlling weight, a treating source "may still be entitled to deference." *Id.* The amount of deference due depends on weighing several factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ may dismiss or discount an opinion from a medical source only if his decision is "based on an evaluation of all of the factors set out in the cited regulations" and if he provides "specific, legitimate reasons" for the rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted). "An ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis omitted). An ALJ may not substitute his own judgment for that of a medical professional. *See Winfrey*, 92 F.3d at 1022.

Mr. Yutzy first argues the ALJ failed to consider whether Dr. Harazin's opinion was entitled to controlling weight. The ALJ rejected Dr. Harazin's opinion, giving it "very little weight" because "the severity of the impairment given is not supported by and is contrary to the records as a whole nor is it supported by Dr. Harazin's own records." AR 19. While this abbreviated analysis does not specifically discuss whether the opinion is entitled to controlling weight, the ALJ held that the opinion was not supported by the evidence, which means the ALJ

necessarily concluded it was not entitled to controlling weight. *See* SSR 96–2P, 1996 WL 374188, at *1 (July 2, 1996) (explaining an opinion is not entitled to controlling weight if it is inconsistent with other substantial evidence in the record); *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (rejecting argument that the ALJ erred by failing to expressly state whether he gave the treating source's opinion controlling weight where decision showed "ALJ implicitly declined to give the opinion controlling weight").

While I hold the ALJ implicitly applied the correct legal framework, the ALJ erred in *applying* that framework because he did not provide "specific, legitimate reasons" for rejecting Dr. Harazin's opinion. *Chapo*, 682 F.3d at 1291. The ALJ tersely concluded that Dr. Harazin's opinion was not supported by the record or his own treatment notes, but he failed to provide any examples of the record evidence contradicting Dr. Harazin's opinion. AR 19. Instead, the ALJ provided a string cite—with no pinpoint references or further explanation—to Dr. Harazin's records and to the disability determination explanation from the state agency. *Id.*

In her briefing, the Commissioner offers various reasons why perhaps the ALJ could have reasonably discounted Dr. Harazin's opinion. But these reasons were not offered by the ALJ, who must offer specific and legitimate reasons for discounting a treating source's opinion. Here, the ALJ provided no such analysis, nor did he cite any specific records to support his conclusion; neither I nor the Commissioner can provide it for him. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (reversing and remanding where lower court improperly

"supplying possible reasons for giving less weight to or rejecting the treating physician's opinion"; holding the "ALJ's decision should have been evaluated based solely on the reasons stated in the decision"); *Russ v. Colvin*, 67 F. Supp. 3d 1274, 1279 (D. Colo. 2014) ("[I]n suggesting that Dr. Scanlan's treatment notes did not support the assigned limitations of her opinion, the ALJ cited to the entirety of the doctor's treatment notes, without pointing to any specific record within that 69–page exhibit that ostensibly supported his conclusion. The court is neither inclined nor, indeed, authorized, to search through the administrative record in an attempt to pinpoint evidence that might support the ALJ's findings, and the Commissioner's attempts, post hoc, to fill in the blanks on the ALJ's behalf are improper as well." (citations omitted)).

Because the ALJ did not provide specific and legitimate reasons for rejecting Dr. Harazin's opinion, remand is necessary. On remand, if the ALJ again rejects Dr. Harazin's opinion, he should support his decision with specific citations to the record.

### B.    Dr. Berkowitz's Opinion

Mr. Yutzy accurately points out that the ALJ failed to discuss the opinion of Dr. Berkowitz, a state agency reviewing psychologist. In May 2013, Dr. Berkowitz reviewed Mr. Yutzy's file and concluded he was not yet "sufficiently stable to handle full–time work," but that he did not believe the limitations would last more than 12 months. AR 45.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." *Mays*, 739 F.3d at 578 (quotation omitted). The Commissioner does not dispute that the ALJ failed to consider Dr. Berkowitz's opinion, but argues it was harmless because Dr. Berkowitz opined that Mr. Yutzy's condition was not expected to last more than 12 months so the opinion would not have helped him.

I need not decide here whether the error was harmless because remand is already necessary on the grounds described above. Therefore, on remand, the ALJ can correct the error and discuss the weight he assigns to Dr. Berkowitz's opinion.

C.   **Rejection of Lay Evidence**

Mr. Yutzy argues the ALJ failed to properly analyze lay evidence from Mr. Yutzy's father (who was also his employer) and brother (who was also his coworker). They provided letters regarding Mr. Yutzy's attempt to work immediately before the disability period. AR 195–98. In their letters, they recounted Mr. Yutzy's severe impairments. His father explained that "I can tell you that no employer would be able to afford the continual mistakes due to Brad's mental illness." AR 196. He also gave specific examples of Mr. Yutzy's inability to complete even simple tasks like digging a trench, painting, or unloading materials from a truck. AR 195–96. Mr. Yutzy's brother similarly explained that, "I realized shortly after he starting with me that he literally didn't have the ability to hold a job for anyone else." AR 197–98.

SSR 96–8P provides that "[t]he RFC assessment must be based on all of the relevant evidence in the record," including "[l]ay evidence," and "[e]vidence from attempts to work." *See* SSR 96–8P, 1996 WL 374184 (July 2, 1996). The ALJ gave the letters little weight because "they show the claimant's [sic] to be much worse that [sic] the actual physician records would support." AR 22. Beyond this single sentence, the ALJ provided no further explanation for his determination. This boilerplate language is insufficient to support the ALJ's determination and it precludes adequate review. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("As is the risk with boilerplate language, we are unable to determine in this case the specific evidence that led the ALJ to reject claimant's testimony."); *Clifton*, 79 F.3d at 1009 ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . .").

Remand is therefore necessary for the ALJ to properly analyze the lay evidence. On remand, the ALJ should provide specific support from the record for the weight he assigns to this evidence.

### D. Assessment of Mr. Yutzy's Credibility

Mr. Yutzy argues the ALJ improperly assessed his credibility. The ALJ found that Mr. Yutzy's descriptions of his impairments was not entirely credible because (1) he was not compliant with his medication and "would stop taking medications on his own"; (2) his reported symptoms were not supported by the records; and (3) Mr. Yutzy was drinking alcohol while on prescribed medication. AR

21.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (quotation omitted).

I agree with Mr. Yutzy that the ALJ's credibility determination is not supported by substantial evidence in the record. First, contrary to the ALJ's determination, Mr. Yutzy was compliant with his medications during the disability period. He complied with dozens of medication changes and, with one exception, invariably followed his doctors' recommendations. That one exception was when he was supposed to slowly increase the dosage of Latuda from 20mg/day to 60mg/gram. AR 203. He initially failed to increase the dosage, but when reminded he was supposed to, he complied. *Id.* This one failure—over roughly two years of treatment—does not support the ALJ's conclusion that Mr. Yutzy was not complaint with his medications. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) ("A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it"). Moreover, the ALJ failed to provide a single record citation or example supporting his conclusion that Mr. Yutzy was not compliant, which independently supports remand. *See Russ*, 67 F. Supp. 3d at 1279.

As to the second reason offered by the ALJ (that Mr. Yutzy's symptoms were not supported by the record), the ALJ appears to have overlooked several pertinent medical records. The ALJ concluded that the medical records did not support Mr. Yutzy's testimony that his memory was so bad that he was unable to work some days. AR 21. However, the medical records include multiple references to poor memory and cognition throughout the disability period, which provides ample support for his testimony on this point:

- "c/o [decreased] memory, so has not taken board exams yet." AR 183 (evaluation from July 10, 2012)

- "c/o confusion. States he has been having trouble understanding things lately." AR 203 (progress note from August 5, 2013)

- "Still having confusion." AR 203 (progress note from August 19, 2013)

- "I recently evaluated Mr. Brad Yutzy as part of his follow–up appointment. I had recently received communication from Mr. Yutzy's family expressing their concern over his cognitive abilities. They felt his ability to concentrate, memorize and problem solve was worsening . . . [T]hey were correct." AR 192 (October 10, 2013 letter from Dr. Harazin)

- "Continues to deteriorate. Memory very poor." AR 202 (progress note from November 4, 2013)

The ALJ did not discuss any of this probative evidence when he concluded that the record did not support Mr. Yutzy's testimony about his memory impairments. *See Clifton*, 79 F.3d at 1010 (holding that an ALJ must discuss "the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects").

15

As to the third and final reason why the ALJ discounted Mr. Yutzy's credibility (that he drank while on prescribed medications), there is no evidence Mr. Yutzy abused alcohol during the disability period. While he struggled with alcohol abuse or even dependence *before* the disability period, AR 162, none of the medical records from the disability period suggest he drank excessively, that alcohol use interfered with his treatment progress, or that it was prohibited by his treatment providers, *see* AR 180–83; 190; 192; 201–03. Additionally, ALJ failed to discuss how Mr. Yutzy's alcohol use before the disability period was relevant to the credibility of his complaints during the disability period. And once again, the ALJ failed to provide any record citations supporting his conclusions regarding Mr. Yutzy's alcohol use, making it impossible for this Court to review his conclusions. *See Russ*, 67 F. Supp. 3d at 1279.

Thus, the ALJ's credibility determination is not supported by substantial evidence in the record, and in some instances, it is directly refuted by the record evidence. On remand, the ALJ should support his credibility determination with specific references to the evidence in the record.

### E. Inconsistency at Steps Two, Three, and Four

Mr. Yutzy argues that the ALJ's step one finding (that his affective disorder and anxiety were "severe impairments") and his step four RFC determination (limiting Mr. Yutzy to simple work in isolated settings) are inconsistent with his determination at step three that Mr. Ytuzy was only "mildly" limited. Mr. Yutzy fails to identify any prejudice flowing from this alleged inconsistency because he

16

presents no evidence or argument suggesting that he met one of the listings at step three. *See Carter v. Colvin*, 27 F. Supp. 3d 1142, 1150 (D. Colo. 2014), *aff'd*, 597 F. App'x 501 (10th Cir. 2015) (unpublished). Thus, he has failed to demonstrate that the ALJ must reconsider his step three determination. *See id.*

## V. Conclusion

ACCORDINGLY, for the foregoing reasons, I **REVERSE** the Commissioner's final order and **REMAND** for proceedings consistent with this order.

**Dated**: January   27  , 2017 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE